Appearing for the appellant is Attorney Donald Jackson and for the appellee is Attorney Barbara Murdo. Good morning. Good morning. Mr. Jackson, are you ready to proceed? I am ready. You may. First, let me apologize for being late. I went to the wrong courthouse. By the time I got through security, I was a little late, so I apologize. First of all, this case is about whether or not Mr. Orr will be given the opportunity to pursue his claim for defamation. And the case was dismissed by the circuit court on the grounds that the case was precluded by the Ecclesiastical Extension Doctrine. I submit to the court, as I've said in my brief, that that doctrine simply doesn't apply to this case. This is a defamation case. The question of whether or not Mrs. Henderson lied about the conversations that she had with Reverend Orr at a church convention can be determined by neutral principles of the law. We have a well-established law in the state of Illinois on defamation, and it is that law that, in my judgment, applies here. An examination of the question of whether or not she lied does not require an inquiry into ecclesiastical law, edicts, any of the policies of the church. It simply is up to a jury to decide whether or not she's telling the truth or Reverend Orr is telling the truth. There is a process before the church which she could have taken advantage and she didn't. When she charged Reverend Orr with making improper comments to her, she had the opportunity to file a complaint against him, a certified complaint, before the church. She filed the complaint, but she failed to certify it. And then, in the long run, she just abandoned the claim. So there stood Reverend Orr with his serious allegation against him, faced with his peers that he had, in fact, said some, in her opinion, derogatory things about her personally and about her looks, was never examined before that process. Reverend Orr didn't have a similar process. There is nothing in church doctrine that would allow him to pursue any kind of action against her. His only recourse is to pursue a defamation claim in the circuit court. Now, the circuit court, as I said, dismissed it basically saying that the ecclesiastical abstention doctrine required him to do so. But I think that the question of whether or not that's required has long been settled in this country as far back as Jones v. Wolfe in 1979. And that case stood for the proposition that as long as a matter of this nature, something that's common in our law, defamation cases, can be resolved through neutral principles of law, and there's no need to examine doctrine of the church to make that decision, then the case can proceed in the circuit courts. And consequently, we believe that that's the proper place for this case. Reverend Orr is entitled to his day in court as well, and he's been denied that. There isn't any procedure that remains under the church's doctrine. As I say, they have this doctrine called the Book of Discipline. And the Book of Discipline does allow parishioners to file charges or complaints against a pastor in the church, and they can proceed according to their process that they have. But it requires some things in advance. One of those is that she's got to file a formal complaint under oath saying that the allegations that she's made against him are true. Why are these alleged procedural deficiencies pertinent to the defamation claim? And why aren't they subject to the guidelines or the provisions of the Book of Discipline and the jurisdiction of the Judicial Committee? Why aren't they specific to these procedural complaints that you have or that your client has? Why are they pertinent to the defamation? Well, let me be very clear. He did not file anything under that procedure under the Book of Discipline.  Defendant Henderson failed to file a complaint in accordance with the requirements of the discipline committee or the discipline policy. We were responding to arguments that we anticipated would be made in this case that he should have went through that process so that everybody understood. We argued that that process required some preliminary steps on behalf of Ms. Henderson, which she did not follow and did not follow through on the case. After making the allegations, she just dropped the action under the Book of Discipline. Quite frankly, we don't think that it has any relevance at all to his defamation case. I think we think that he should have the opportunity under the circumstances to file a defamation case and not be prohibited from doing that based on the so-called ecclesiastical extension doctrine. So while we argued that, we only did it in anticipation of that argument coming up by the other side. So then I have a follow-up question. The fact that the complaint was abandoned, does that leave the position that this doctrine cannot be relied upon because it wasn't sort of certified and perfected going through the process of the internal review? That would be my argument. I think if they have rules and regulations that need to be followed, they should be followed. So there's a distinction between the investigation and the outcome of going through all proceedings. Just merely the investigation and the complaint is not enough to invoke the doctrine? No. The doctrine is very clear as to what it requires, and it was not followed in this case, and ultimately it was abandoned. And even in this court, in the circuit court, Ms. Henderson abandoned any of her claims against Dr. She refused to participate in case management conferences. She refused. She hasn't even answered his complaint yet. And so this case floundered for a long period of time because we simply could not get any cooperation from her, and the court in deference to her allowed many continuances. What's the status of the proceeding? We had not finished discovery yet before the other side filed the motion for summary judgment based on the doctrine. And I'm sorry, not within this proceeding, but in the disciplinary proceeding? There's nothing pending in the disciplinary, before the disciplinary committee. Well, let me follow up there. There's nothing pending. Is there a final finding with regard to the investigation? Was it dismissed? No, there was a finding initially. The first process examined both Reverend Orr as well as Ms. Henderson under oath and found that her allegations against him were not credible, and so they dismissed it. And it never proceeded on beyond that stage at that level. Mr. Jackson, I'm sorry, but I seem to remember reading that it was basically stayed that it is pending, but that nothing is proceeding at this point pending the outcome of this appeal. Is that correct or incorrect? No. Ms. Henderson has disappeared. The last time we had any contact with her was at her deposition. And since that time, she has not appeared in the circuit court. She's not responded to anything. So as far as we're concerned, we know nothing that's still pending before the disciplinary committee under the Book of Discipline. What if we ask the question as far as the discipline committee, as far as they're concerned, is it stayed or dismissed? Well, I can't answer for them. I wish I could, Your Honor, but I can't. I don't know how they would respond to that. So the bottom line is that we feel that Reverend Orr, to us, this is no different than the – sorry, I'm getting dry mouth – than the disciplinary actions, say, in the Catholic Church based on sexual abuse. There is a clear recognition that the victims in those cases have a right to pursue actions against churches without being kicked out of court based on its doctrine, the ecclesiastical doctrine. And we think this is a parallel to that. Reverend Orr, the matters in Reverend Orr's case can be decided without any investigation of church doctrine. They can be decided as they have historically when it comes to declaration, and we believe that that's what should happen in this case. That's all I have, Your Honor. All right. Thank you, Mr. Jackson. Thank you. Ms. Murdo. May I please support, counsel? My name is Barbara Murdo. I represent the Fourth Episcopal District of the African Methodist Episcopal Church, Bishop John Bryant and Reverend Tyson Parks. The only claims that are issued in this appeal is plaintiff's assertion that the bishop and Elder Parks republished false sexual misconduct allegations that were made to them against plaintiff, thereby giving rise to defamation, false lie invasion of privacy, and intentional infliction of emotional distress claims against them and the church. The trial court correctly concluded that the Ecclesiastical Abstention Doctrine precludes the court's consideration of plaintiff's claims and alternatively that plaintiff had not offered sufficient admissible evidence creating genuine disputes of fact for jury consideration on his claims against the AME church defendants. I need to stop here and correct a few statements made by counsel. There has been no abandonment of the church proceedings. They're on hold. The Judicial Committee initially found that Ms. Henderson's allegations were not founded because there was insufficient evidence. They were presented with further evidence, went back into session, and the Judicial Committee actually found the allegations sustained and then proceeded with a recommendation that a trial committee be formed. The trial committee has been formed. Reverend Orr made some objections to some of the appointments to that trial committee, and as far as I know, those objections have not yet been resolved. The matter is on hold, but it has certainly not been abandoned. She's also not abandoned her defense of this very lawsuit. It's true that she has not appeared for a couple of case management conferences, but she has filed a motion to dismiss the complaint, which has been briefed but not heard. She has appeared for deposition. She's participated in written discovery. Wasn't she defaulted? Not completely. The trial court did agree at her failure to appear for a case management conference that a default order would be entered against her for that failure, but the trial court required a written order. That written order was never submitted, so the default judgment was not entered. There's been no prove-up of damages, so there is no final judgment against Ms. Henderson. Everything remains pending against her. Under the ecclesiastical abstention doctrine, religious organizations have the power to decide for themselves, free from state interference or oversight, all matters of church governance as well as those of faith and doctrine. Specifically, the decisions of religious entities about the appointment and removal of their own clergy are decisions that are beyond the reach of civil courts. Courts are not permitted to inquire into whether church tribunals follow their own laws and procedures in arriving at their decisions, since that inquiry into the procedures that are required by canon or ecclesiastical law is exactly the type of inquiry that the First Amendment prohibits, and that's straight from the U.S. Supreme Court in the Serbian Eastern Orthodox Diocese v. Milovojevic case. In Steppick v. Doe, the Illinois Appellate Court applied the ecclesiastical abstention doctrine in holding that civil courts lack subject matter jurisdiction over tort claims which arise out of alleged false allegations of clergy sexual abuse, where those accusations initiated and became a part of a church's internal disciplinary proceedings. That's exactly the case here. Ms. Henderson has made a claim of sexual harassment against Reverend Orr, alleging that he made statements of a highly inappropriate and sexual nature to her while he was instructing her on the process for admission to ordained ministry in the church, in his capacity as the head of a committee responsible for screening candidates to ordained ministry. Her complaint initiated the clergy's sexual disciplinary proceedings against Plaintiff that are still ongoing. She reported the alleged harassment to Elder Parks, who is Plaintiff's direct supervisor and who is the person designated under the Book of Discipline to receive a report of sexual misconduct against Plaintiff. Elder Parks received both verbal and written complaints from Ms. Henderson, thereby commencing the process under the Book of Discipline for internal investigation and potential adjudication of sexual misconduct allegations against Plaintiff. Whether the AME Church has or has not fully followed its own internal procedures in investigating and adjudicating the allegations against Plaintiff is precisely the type of inquiry that civil courts are not permitted to make. As the Illinois Appellate Court recognized in Stepick, the First Amendment protection for internal religious disciplinary proceedings would be meaningless if a parishioner's accusations that were used to initiate those proceedings could be tested in civil court. The Appellate Court in Stepick also rejected application of the neutral principles of law approach to resolving the plaintiff's defamation and intentional infliction of emotional distress claims in that case. The court explained that even though it was possible that the claims themselves could be resolved without any direct interpretation of Catholic Church doctrine, resolving the dispute would involve the secular court interfering with the Church's internal disciplinary proceedings by evaluating the veracity of the statements that initiated and were made in the process of those proceedings. The Duncan case, which plaintiffs cited for the first time in their reply brief, is clearly distinguishable. In Duncan, the conduct complained of was the defendant's publication completely outside the Church of information about the defendant's revocation of the plaintiff's ordination as a minister. The publication in Duncan was made by defendants to a different church and also apparently to a guardian ad litem in the plaintiff's pending civil divorce proceeding. And it was not in the context of ongoing disciplinary proceedings because the plaintiff had already left the defendant's church. Here, the undisputed admissible evidence that was before the trial court established that the defendants did not publish Ms. Henderson's allegations outside the clergy disciplinary process. So this case is like Stetrick, not like Duncan. Here, the sworn evidence from the testimony of the witnesses with personal knowledge is that any repetition by Elder Parks of Ms. Henderson's allegations of sexual misconduct by plaintiff was made exclusively in the course of the clergy disciplinary proceedings under the Book of Discipline. Elder Parks testified that he never told Reverend Larry Lewis that plaintiff was the subject of a sexual misconduct complaint that he was planning to forward to Reverend Lewis and that he never actually forwarded that complaint to Reverend Lewis because he learned before doing so that Reverend Lewis was not the head of the committee that handled that type of complaint. Elder Parks further testified that he never discussed the allegations with Reverend Clarington but merely forwarded the complaint to her in her capacity as the chair of the judicial committee that was charged with investigating the allegations. All of the admissible witness testimony supports only the conclusion that plaintiff that the publication outside the clergy disciplinary process did not occur. If there was testimony from other witnesses that would contradict that evidence, then it was incumbent upon plaintiff to bring that to the attention of the trial court and plaintiff did not do so. Are you aware of any case that limits the application of the Church doctrine and not to Church disciplinary proceedings? No, I have not run across that case. Most of the cases describe it in terms of disciplined doctrine and faith, not exclusively faith and doctrine. Plaintiff's reliance on neutral principles of law is misplaced. While Illinois courts have intervened in certain disputes involving churches on grounds of neutral principles of law, those cases generally involve purely secular disputes over ownership and control of church property or contract rights. Using neutral principles of law is not permitted where the subject matter of the dispute involves matters of clergy or church member discipline, which is the case here. Here, the subject matter of this dispute is defendant's manner of executing its own internal procedures for investigating and addressing clergy sexual misconduct allegations. The secular courts are not permitted to intervene in those matters, even where the outcome of the Church's proceedings may have some impact on secular rights. Irrespective of whether defamation, false light privacy, intentional infliction of emotional distress claims can in general be determined under neutral principles of law, Illinois courts are not permitted to even attempt that neutral principles analysis when the case involves a subject matter such as this where court review is precluded. The AME Church very clearly considers clergy sexual misconduct to be a matter of ecclesiastical and doctrinal significance, which the official policy statement of the Church, which is found at page 30 of our brief, makes very powerfully clear. This subject matter is ecclesiastical rather than secular in nature, and the civil courts simply lack subject matter jurisdiction to consider it. The trial court's second alternative basis for summary judgment in favor of the AME Church defendants also is supported by the record. There was insufficient admissible evidence before the trial court to establish required elements of each of plaintiff's claims. The claims for defamation, defamation per se, false light invasion of privacy, all require plaintiff to present facts that the defendant made a false statement about a plaintiff to a third party. The trial court had before it the undisputed testimony of Elder Parks, who testified that there was no publication to any third party in this case. Even assuming the falsity of Ms. Henderson's allegations for purposes of considering the summary judgment motion, there was no admissible evidence before the trial court that the AME defendants disseminated those allegations to any third party. Did you argue that at the trial level? We did not. Our summary judgment motion was based on the ecclesiastical abstention doctrine. I think that that would arguably, the ecclesiastic abstention doctrine might not apply if the people in the church hierarchy were discussing this, publicizing these claims beyond church personnel. In other words, they decided they were going to have an interview with the local church, with the local press in Bloomington Normal to explain, oh, this complaint has been made and the pantograph picks it up. That would not be within the ecclesiastic abstention doctrine, would it? That would be the Duncan case rather than Step. Yes, I agree. And your argument is, we didn't do that. We just kept it essentially in-house or within church administration folk? All the admissible evidence, it was before the trial court supports that, yes. Well, I just want to make sure, the reason I ask that is, if this is an important part of your position, which it appears to be, I'm interested if it was argued at that time that the trial court and trial court talked about it and what Mr. Jackson, on behalf of the plaintiff, responded. That is, he says, oh, no, that's not true. Here's evidence where they, in fact, went beyond that. Was any of that said or done? It was to a limited extent. The secondary basis for the trial court's summary judgment order is not particularly well-developed in the record. It's not an argument that we made in our summary judgment motion, but it is an argument that plaintiffs made in their response, arguing that, in a somewhat non-sequitur response to our ecclesiastical abstention doctrine argument, that no, we've presented evidence supporting facts on each element of our claims. Therefore, we have a right to get to a jury. My impression is that the trial court's secondary basis was a rejection of that argument by plaintiffs based on the admissible evidence that the parties presented. Let me interrupt you again. The Stepak case would seem to support dismissal of a cause of action where the ecclesiastic abstention doctrine applied based on a lack of subject matter jurisdiction. Was there a motion to dismiss in this case for lack of subject matter jurisdiction? No, it was not brought as a motion to dismiss. It was a summary judgment motion, but the argument is the same. I guess in our view, the assertion of lack of subject matter jurisdiction and the ecclesiastical abstention doctrine are two ways of asserting the same thing. In this case, the trial court correctly concluded that the admissible evidence established both that the ecclesiastical abstention doctrine applies to preclude the court's consideration of plaintiff's claims and alternatively that plaintiff had offered insufficient admissible evidence to create a genuine issue of material fact for jury consideration on the claims. Either basis on which the trial court granted summary judgment for the AME defendants is supported by the record and my client's request that the trial court's judgment be affirmed. Thank you. Mr. Jackson, rebuttal argument? Just one argument, Your Honor, and that is the question of whether or not there was a republication of the allegations made by Ms. Anderson was a matter that we did not have an opportunity to develop because we didn't finish discovery. Reverend Orr says that both Lewis and the other minister told him clearly that Reverend Parks said he was guilty and talked about the case to those people. We now know that Lewis was not part of the disciplinary committee, notwithstanding the fact that Parks claimed he made a mistake about that point. We never had a discovery schedule created by the circuit court in this case, primarily because we never had cooperation from Ms. Henderson to get one set in the record. Discovery was ongoing at the time that the motion of summary judgment was in fact filed and argued in this case. Without having an opportunity to question Reverend Lewis and Reverend Clarington under oath to verify what they told Reverend Orr, their assertion that Parks admits he talked to them, but he denies what Reverend Orr was told that he said. That point just wasn't developed because we didn't get a chance to finish discovery in this case. Thank you.